*1036 OPINION.
Siefkin :
The question of the March 1,1913, value of two patents is presented by the parties. On that date petitioner had, by contract, granted an exclusive license for five years with privileges of further *1037 renewals for further five-year periods, covering the two patents and improvements thereon which should be made. The considerations flowing to petitioner by the contract were the payment of a royalty of 10 per cent of the net profits of the company, petitioner’s employment by the company at a stated salary as manager, and an agreement that in case of his death the company should pay to his estate the value of the patents at the time of death. A similar clause provided for payment to the petitioner of the value of the patents in the event that the company sold out or consolidated. The contract provided that petitioner should assign the patents to the company but should have them reassigned to him should the company not renew the agreement.
Petitioner thus had, on March 1, 1913, his patent rights largely merged in, or at least limited by, his rights and duties under the contract, effective January 1, 1913. The patents had been granted late in 1911 and in 1912 and neither petitioner nor the company had developed the market for the patented articles to the extent that the earnings therefrom up to March 1, 1913, standing alone, were any fair indication of a fair market value on that date. All of the other circumstances affecting the patents must be considered. One such circumstance is an offer to purchase the patents for $150,000 early in 1913, which offer the prospective purchaser was able and willing to carry out. Others are testimony of witnesses familiar with the devices covered by the patents as to the probable market as it existed on March 1, 1913, the steps taken by the company which acquired the rights to manufacture under the patents in enlarging its plant, the acceptance of the devices by various purchasing agencies of the Federal Government and numerous sales made to such agencies before March 1, 1913, as well as the opinions of experienced witnesses and the subsequent history of the earnings to petitioner. When we consider all this evidence, we are led to the conclusion that the fair market value of petitioner’s interest in the patents on March 1, 1913, was far in excess of the amount determined by respondent. However, the subsequent history of the company and the earnings from the patents fully justified the expectations of petitioner, yet, even under such favorable conditions, the patents yielded him in royalties and sales price the total sum of $215,150 in a period of six years. Under such circumstances we believe the facts show the estimates of the witnesses to be unduly optimistic and that $175,000 more nearly represents the value. In computing the gain or loss on the sale in 1919, that amount should be reduced by the deductions for exhaustion allowable to petitioner, based upon an expiration date of December 11, 1928, the expiration date of the earlier patent, since we have no information showing that *1038 after that date the other patent will maintain the monopoly held by both up to that time.

Judgment wiU be entered on 15 days’ notice, under Rule 50.

Considered by Trammell, Morris, and Murdock.